# IN THE COURT OF APPEALS OF IOWA

No. 18-0298
Filed May 1, 2019

IN RE THE MARRIAGE OF ROXANNE M. JOHANNINGMEIER
AND TRAVIS C. JOHANNINGMEIER

Upon the Petition of
ROXANNE M. JOHANNINGMEIER,
        Petitioner-Appellant/Cross-Appellee,

And Concerning
TRAVIS C. JOHANNINGMEIER,
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Allamakee County, John J.

Bauercamper, Judge.

        Roxanne Johanningmeier appeals, and Travis Johanningmeier cross-

appeals, the district court order denying both parties' petitions to modify a

dissolution-of-marriage decree. **REVERSED AND REMANDED ON APPEAL;**

**AFFIRMED ON CROSS-APPEAL.**

        James T. Peters of Peters & Longmuir, PLC, Independence, for appellant.

        James Burns and Dana DeSimone of Miller, Pearson, Gloe, Burns, Beatty

& Parrish, P.L.C., Decorah, for appellee.

        Heard by Potterfield, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

Roxanne Johanningmeier appeals, and Travis Johanningmeier cross-appeals, the district court order denying both parties' petitions to modify provisions of a dissolution-of-marriage decree. Roxanne argues the district court erred in failing to find a substantial change in circumstances to justify a modification of Travis's child-support obligation. Roxanne contends income Travis receives from his solely owned corporation should be included in the child-support-guideline calculation. Travis argues the district court erred in failing to find a substantial change in circumstances to justify a modification of the custody provisions of the decree with respect to the parties' youngest child. Travis argues a shared-care arrangement, rather than placement with Roxanne, is in the child's best interests. Roxanne requests an award of appellate attorney fees.

**I.       Background Facts and Proceedings**

Roxanne and Travis were married in July 2000. They are the parents of three children: C.N.J., born in 1995; M.J., born in 2000; and C.R.J., born in 2004. Roxanne petitioned for dissolution of the marriage in 2011. On April 30, 2012, a stipulated dissolution decree was entered. The parties agreed to joint legal custody with Roxanne having physical care of the three children. Both parties waived the filing of their financial statements prior to the court's approval of the decree. Under the stipulation, Travis was responsible for paying Roxanne $1500.00 each month in child support. The stipulation identified the support obligation "varies from the child support guidelines, but is fair to both considering the parties' assets and earning." The stipulation also identified, "Child support payments shall continue for a child until the child attains the age of 18 years, or

termination of the child's high school education, whichever shall occur last, but not past the age 19," but provided no step-down amounts for when support was payable for two children or one child. The stipulation required Roxanne to continue to pay for the children's health insurance through her employer and Travis to reimburse her for that cost. Roxanne would be responsible for the first $250.00 per child for any further medical expenses not covered by insurance, not to exceed $800.00 in total. For any uncovered medical expenses beyond that amount, Travis would be responsible for seventy-five percent and Roxanne twenty-five percent of the cost. There is no other provision for cash medical support.

An unsigned child-support-guidelines worksheet was prepared and filed by Roxanne at the same time as the stipulation. The worksheet stated Roxanne's and Travis's gross annual incomes were $11,813.35 and $99,625.00 respectively. The worksheet resulted in a child-support-guideline amount of $1561.57 and cash-medical support of $415.10 payable by Travis to Roxanne. The worksheet also provided a breakdown of the guideline amount of child support for one and two eligible children.[1]

The district court approved all of the stipulation's provisions in a "Decree of Dissolution of Marriage." The decree stated "[t]he child support as agreed substantially complies with the child support guidelines." The decree does not provide for a decrease or a recalculation of the child-support obligation as each child reached adulthood. Further, the decree does not award a monthly cash-medical award to Roxanne.

---

[1] The worksheet calculated a child support obligation of $1346.06 when there were two eligible children and $944.98 when there was only one.

At the time of the dissolution, Roxanne worked part-time at a medical center in Prairie du Chien, Wisconsin. She terminated her employment for a few months in order to finish her associate's degree. She returned to the same employer in the summer of 2012, where she remained at the time of the modification hearing. At the time of the modification hearing, Roxanne worked as a medical coder from home. Both of the younger children lived with Roxanne at the time of the hearing.[2] Throughout the marriage, dissolution, and at the time of the modification hearing, Travis owned, operated, and is the sole shareholder of TJ's Fencing, a "C" corporation.[3]

After C.N.J. reached adulthood in 2013, Travis continued paying $1500.00 per month in child support for the two remaining minor children. In approximately 2015, Travis unilaterally reduced his child-support payment to $1300.00 per month. Roxanne began contempt proceedings after Travis amassed arrearages of approximately $3000.00. Travis subsequently paid the arrearages and the contempt proceedings were cancelled. Travis has continued paying the $1500.00 per month obligation since that time.

In December 2016, Travis petitioned to modify the dissolution decree's child-support provisions to reflect C.N.J. reaching the age of majority and graduating from high school. He further requested the modification incorporate a future amount which would reflect the child-support obligation when only one child, C.R.J, would be eligible for support. Roxanne asked for a hearing on the matter

---

[2] M.J. moved in with Travis for a large part of the summer of 2017 due to a disagreement between Roxanne and M.J. M.J. moved back in with Roxanne in August.
[3] The business buys scrap material and transforms it into fencing material, which is then sold to other businesses.

and requested the ensuing order reflect the child-support obligation based upon the application of the child-support guidelines. In April 2017, Travis amended his petition to additionally request a modification of the physical-care provisions. Travis requested physical care of M.J. and shared physical care of C.R.J. He argued a substantial change in circumstances had occurred since the entry of the dissolution decree, as M.J. lived with him full time and C.R.J. was with him fifty percent of the time. He also requested his child-support obligation be reconfigured. Roxanne did not file a resistance to the amended petition.

Trial was held in December 2017. Personal tax returns for both parties for 2015 and 2016 were admitted as evidence. Travis's 2014 personal return and the tax returns for TJ's Fencing from 2013-16 were also admitted. In February 2018, the court entered its ruling, finding there was insufficient proof of a material or substantial change in circumstances or that Travis was a superior parent. Based upon these findings, it denied Travis's request for a modification of physical care. The court also found that "substantial evidence ha[d] not been presented to warrant limiting Travis' annual income to less than $100,000.00 per year," and imputed a monthly income of at least $25,000.00 per month. The court concluded "that when a parent's month income exceeds $25,000.00 per month, [support] is within the sound discretion of the court." The court determined there was no substantial change in Travis's financial standing or that the children's needs have changed or were not being met. The court denied Roxanne's request for a modification of child support. The court awarded Roxanne $2000.00 in attorney fees. Both parties appeal.

## II.     Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). Therefore, we review modification actions de novo. *See* Iowa R. App. P. 6.907. "[W]e make our own findings of fact, 'when considering the credibility of witnesses the court gives weight to the findings of the trial court' even though we are not bound by them." *Hoffman*, 867 N.W.2d at 32 (quoting *In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989)).

## III.    Analysis

### A.     Physical Care

On cross-appeal, Travis challenges the district court's denial of his request to modify the physical care of C.R.J. to shared care. He argues shared care is in C.R.J.'s best interests as C.R.J. should have the benefit of increased time with Travis. He also highlights that the relationship between himself and Roxanne is not acrimonious and they have been able to co-parent. He contends he should not have to argue Roxanne's parenting is inferior or introduce acrimony into the parties' parenting relationship in order to meet his burden for modification.

Travis "must prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). He must also "prove a superior ability to minister to the needs of the children." *Id.* The change in circumstances "affecting the welfare of children and justifying modification of a decree 'must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.'" *Id.* (quoting *In re Marriage of*

*Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). Travis's burden is a heavy one as "once custody of children has been fixed it should be disturbed only for the most cogent reasons." *See Frederici*, 338 N.W.2d at 158. "Any consideration of joint physical care . . . must still be based on Iowa's traditional and statutorily required child custody standard—the best interest of the child." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.*

In this case, the parties, for the most part, are able to communicate and co-parent without animosity. Both parties testified they consider the other to be a good parent and they agreed they have been able to work out any visitation issues that arose. The only matter that seemed to be a problem was when Travis unilaterally paid less than the ordered amount of child support. However, that issue was corrected when Travis paid the arrearages. There is nothing else in the record suggesting Travis has since become delinquent with his child-support obligation. Otherwise, the relationship between Travis and Roxanne regarding their children has remained the same. On our de novo review, we find Travis has failed to prove that a material change in circumstances occurred since the dissolution decree that would support a finding of cogent reasons to justify a change of the physical care of C.R.J. Accordingly, we affirm the court's denial of his petition to modify the physical-care provisions of the dissolution decree.

B. Child Support

On appeal, Roxanne argues the district court erred in concluding there was no change in circumstances justifying modification of child support, and argues the

court erred in failing to use Travis's imputed corporate income in calculating child and medical support.

The decree dissolving the marriage ordered Travis to pay monthly child support in the amount of $1500.00 for three children. The stipulation recited the support "varies from the child support guidelines, but is fair to both considering the parties' assets and earnings." The decree, on the other hand, recited: "The child support as agreed substantially complies with the child support guidelines." We also note that both the stipulation and decree separately state the parties waived the filing of financial statements prior to the court approving the decree. Our record reveals that Travis had filed an affidavit of financial status in the dissolution proceedings, but did not disclose any income on that form, and Roxanne filed an unsigned child-support-guidelines worksheet. The dissolution decree made no findings which would support a variance from the guidelines, and the decree found the support substantially complied with the guidelines, notwithstanding the fact that the stipulation disclosed the support varied from the guidelines, and failed to make any findings required by Iowa Court Rule 9.11 to justify a variance from the guidelines. Thus, our analysis of whether there has been a change in circumstances starts from a murky place.

A court may modify a child-support obligation "when there is a substantial change in circumstances." Iowa Code § 598.21C(1) (2016). "The change in circumstances must not have been within the district court's contemplation when the decree was entered." *In re Marriage of Mihm*, 842 N.W.2d 378, 381–82 (Iowa 2014). "[I]t must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice.'" *Id.* at

382 (quoting *In re Marriage of Walters*, 575 N.W.2d 739, 741 (Iowa 1998)). "We recognize that the district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'" *In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006) (quoting *Walters*, 575 N.W.2d at 741).

To determine whether a substantial change in circumstances has occurred, the court must consider a number of factors, including "changes in a party's employment or income, changes in a party's number of dependents, changes in a party's residence, a party's remarriage, and other factors relevant in the case." *Mihm*, 842 N.W.2d at 381; *accord* Iowa Code § 598.21C(1). Further, a "substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines established pursuant to section 598.21B." Iowa Code § 598.21C(2)(a). The court must also "examine the factors in conjunction with several 'other well-established principles governing modification.'" *In re Marriage of Michael*, 839 N.W.2d 630, 636 (Iowa 2013) (quoting *In re Marriage of McCurnin*, 681 N.W.2d 322, 329 (Iowa 2004)). These principles include "[t]he party seeking modification . . . bears the burden of establishing by a preponderance of the evidence the substantial change in circumstances," the "substantial change justifying a modification must be permanent or continuous rather than temporary in nature," and "the substantial change must not have been within the contemplation of the district court when the decree was entered." *Id.*

When deciding whether there has been a substantial change in circumstances, our supreme court has provided guidance for evaluating whether

prior orders that vary from child support guidelines will be binding on subsequent actions to modify support.

> The written findings and reasons are vital to a later determination by the court about whether there has been a substantial change in circumstances. That is the case whether the child support modification is sought under Iowa Code section 598.21C(1) or under section 598.21C(2)(a). If the parties want the district court to deviate from the child support guidelines, and also want to avoid subsequent modification of that award based on an evaluation of changed circumstances or the ten percent deviation, counsel and the district court need to insure that the dissolution decree explains the reasons for the deviation and that those reasons are factually and legally valid. Absent compliance with the statute and our rules, there is no reason to assume that the initial child support amount set forth in the decree has any proper basis, or that it should be used as the basis for subsequent modification proceedings.

*Mihm*, 842 N.W.2d at 385 (internal citations and footnote omitted). *See also* Iowa Code §§ 598.13, 598.21B(2)(d); Iowa Ct. Rs. 9.10, .11, .13.

At the time the dissolution decree was entered in this case, the stipulation stated the support "varies from the child support guidelines," but the decree recited the parties' agreement "substantially complies with the child support guidelines." In addition to the unresolved conflict—and thus, unreliability—of those assertions, the decree contained no finding as to what the guidelines would have provided as proper support. The court filings at that time revealed an absence of financial affidavits or sworn child-support-guidelines worksheets upon which to base any calculations, and the decretal court made no findings to support any variance from support which might have been properly calculated. The above-quoted instructions from *Mihm* are plainly applicable: because of the lack of compliance with statutory and rule requirements for the filing of necessary supporting documents and lack of findings to justify the support originally ordered, we have

no reason to assume the initial support approved by the decree had any proper basis or that it should be used as a basis for this subsequent modification. Because the decreed child-support order was entered without a proper basis, it should not have been used by the district court in determining whether there was a change in circumstances under Iowa Code section 598.21C(1).

The district court determined, and there is no dispute, that Roxanne's annual income is now $37,000.00. Travis's income was disputed at trial. The court determined and imputed a monthly income to Travis of at least $25,000.00 because "substantial evidence has not been presented to warrant limiting Travis'[s] annual income to less than $100,000 per year." However, the court mistakenly concluded that when a parent's monthly income exceeds $25,000 per month, the support amount is within the sound discretion of the court. Instead, when the parties have combined net monthly incomes exceeding $25,000, "the amount of the basic support obligation is deemed to be within the sound discretion of the court . . . *but shall not be less than the basic support obligation for combined net monthly incomes equal to $25,000.*"  *See* Iowa Ct. R. 9.26 (emphasis added).

On appeal, Travis's brief states: "The trial [court] properly imputed some income from Travis's C-Corporation, T.J.'s Fencing, to Travis." His brief focused on affirming the district court's conclusion there was no substantial change in circumstances, arguments we find unpersuasive. We find no reason to disturb the district court's conclusion that Travis's income exceeded $25,000.00 per month. But because the district court failed to recognize the child support must "not be less than the basic support obligation for combined net monthly incomes equal to $25,000," it provided no calculation for us to review. Because it is clear that a new

support calculation will far exceed the ten percent threshold of Iowa Code section 598.21C(2)(a), we remand for a calculation of child support and medical support based on the district court's findings of Roxanne's annual income of $37,000.00 and Travis's monthly income of $25,000.00 under the current guidelines. The modified support orders shall be retroactive to February 2018.[4]

### C. Appellate Attorney Fees

Roxanne requests appellate attorney fees in the amount of $5000.00. On appeal, "attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider "the parties' respective abilities to pay," "whether a party resisting the modification petition was successful, and whether a party has been obliged to defend the trial court's decision on appeal." *Michael*, 839 N.W.2d at 639. We award Roxanne $5000.00 in appellate attorney fees, to be paid by Travis.

## IV. Conclusion

We affirm the court's denial of Travis's petition to modify the physical-care provisions of the dissolution decree as he failed to prove that a material change in circumstances occurred since the dissolution decree. We reverse the court's denial of Roxanne's petition to modify the child-support provisions of the decree and remand for a calculation of child support and medical support based on the district court's findings of Roxanne's annual income of $37,000.00 and Travis's monthly income of $25,000.00 under the current guidelines. The modified support

---

[4] This is the month of the modification order from which the appeal was taken. The periodic due date is unchanged per Iowa Code section 598.21C(6).

orders shall be retroactive to February 2018. We award Roxanne $5000.00 in appellate attorney fees.

**REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**